Good morning, Your Honor, Madhu Kalra appearing on behalf of Respondent. Could you please speak up and articulate? I have trouble hearing. Oh, sorry. I have submitted an appellate brief, and the reason I'm here is just to point out a few points very briefly. I understand that the immigration judge has a discretion to grant or not grant a continuance in a removal proceeding. In this case, Respondent was requesting a continuance based upon the fact that his spouse has filed a good faith labor certification under INA section 245I. And Garman pointed out that under Berrapin v. Reno 225F 3D 1100, the court has a sound discretion as to whether to grant or not grant a continuance. The IJ said he does not have that discretion, and he may be wrong on that point. That is correct. And now, if I look at the 9th Circuit MBEC, I found out certain authorities, Spencer Enterprises Inc. v. United States, 345F 3D 683, 688 and page 89, 9th Circuit 2003. And is that cited in your brief? I found it in the MBEC, in 9th Circuit MBEC. I'm asking a different question. Is that cited in your brief? No, Your Honor. Because? Because I just recently found it, Your Honor. What it indicates is that the court has a discretion, but the discretion is not pure. The discretion which Attorney General can exercise has to be guided by the legal principles. There has to be a certain standard, legal standard, which has to be exercised. Your Honor, now whether, so the decision of the judge, IJ, Immigration Court, cannot be just pure discretionary because the court feels that he is not in a mood to grant continuance. It has to be guided by certain legal principles. But wasn't the judge saying, he knows he can grant continuance, he knows that. What he's saying is, maybe he didn't say it as artfully as he should have. But what he's saying is, I'd have to be out of my mind to grant a continuance for three years. Now if you want 30 days, you want six months, okay. But I can't grant a continuance for three years? That is correct. But my understanding under statute INA 245I, when all the applicants are filing, the application has to be filed, as long as the application, the I-130 or labor certification is filed in good faith. There is no problem for the immigration authority or to allow the illegal aliens to stay within United States to adjust, to allow them to adjust their status until their labor certification or I-130 application is approved. And the visa becomes available. If I look, I have cited in my brief the Mario Eduardo Valradi Pachio. Let me ask you, what is the status of the wife's application? Her labor certification has been approved. She is, she has applied for visa screen certificate. She is only supposed to complete her English examination, and she will be on her way to seek her adjustment of status. And do you have an idea how long that takes from here? I believe it could not, it should not take more than six months. Then if that is granted, she can automatically adjust your client? Right, sometime in October, because at this time, as we all know, that on July 4th, the Department of State has indicated that the visas are not available. So there are quite a few people who are waiting in line. So I believe as soon as the visa opens up in October, she should be ready to adjust her status along with her spouse. She is an Albion, and she has approved labor certification, and her employer is willing to sponsor her for I-140 as soon as she has an English test exam done. So do I understand your argument to be that this was back in 19, I mean rather in 2000, 2003. What the judge should have done is say, I'm going to continue this case until sometime at the end of 2007 or the beginning of 2008. That is correct. I'm reading the IJ on page 56 of the administrative record, and I'm tempted to read it as Judge Silverman has read it. He says, I have no authority to grant that continuance at this time. I'm skipping a little. Seeing that the wife is not in proceedings, then the only way he can gain a benefit if she's granted adjustment status, which may take another year or two. So we're looking at a three-year continuance for this respondent under the theory which you presented. I don't have authority to do that. Now, one way to read that is he says, I have authority to grant some continuance, but three years, sorry, that's just outside any possible discretion I might have. Is that a proper reading of what he said? That is correct, Your Honor, but what I believe is that is not correct. The court did have authority or discretion to grant the continuance, keeping in mind that all other respondents or all other aliens who are illegally in this country, as long as they are not posing any threat, they are non-criminal, they are not posing any threat to security of this country, that this respondent should have given continuance. Now, I don't want to intrude into privilege of materials between attorney and client, so I preface my comment or question by that. I notice in reading the transcript that the IJ pushed fairly hard on your client and on you to apply for asylum, even saying, would you step out in the hall and think this over a little bit, saying, you know, this is the last time you have a chance to apply for asylum. I find it hard to believe that you're represented by a counsel and you've been in the country this long and you don't know about the procedures for applying for asylum. Now, here, so far, that's just spread on the record. Now, I'm reading between the lines. It wouldn't be surprised if what the IJ was saying was, listen, I can't give you the continuance that you want based upon the labor certification request. But if you apply for asylum, it's going to take you at least three years. Why didn't you do that? What's going on here? I think he was trying to give you a way to get to the place you wanted to get in a way that he could deal with. Your Honor, we have ethical duty to file asylum only if the respondent is eligible, Your Honor. Okay. Fair answer. There is a law which prohibits frivolous filing of asylum applications. Okay. Fair answer.  Your Honor, I would again bring to the attention of the court standards under which the IJ should exercise his discretion. And the discretion has to be based upon certain legal principles within applying the legal standards. And it's not just pure discretion. Okay. That's, I think, now going back over the same ground. Why don't we hear from the government? And you've got a lot of time left on the clock. So if you then have things to respond, feel free. All right. Thank you. May it please the Court, my name is Jennifer Paisner on behalf of the respondent. The question here is whether the immigration judge abused his discretion in denying a request for a continuance based on only a pending labor certification. Three circuits that have now considered this exact issue in nearly identical circumstances to the circumstances of this case have held that an immigration judge does not abuse his or her discretion under such circumstances. The only circuit that has even suggested that there might be an abuse of discretion is the Seventh Circuit in the Subhon case. And even in that case, the decision recognized that there were numerous reasons the immigration judge could have given, but in that case didn't, for denying the continuance, which would not have been an abuse of discretion. One of those reasons was specifically that, and in that case it was a year, a continuance of a year is simply not good cause when it's based simply on a pending labor certification. In this case, the immigration judge specifically stated that it could take up to three years for this whole process to go forward, and that was simply too long. As for this Court's question about the wording of the immigration judge's decision, I think it could perhaps have been more artfully worded. I think it's clear that the immigration judge recognized that he had the authority to manage his own docket and could grant a continuance, but he was concerned about the length of the continuance. In this case, in light of the fact that the department had chosen to initiate removal proceedings, and that was proceeding apace, I would note that that circumstance also arose in the Eleventh Circuit Zafar case. The immigration judge in that case apparently made a similar sort of statement, and the Court concluded, similar to my argument just now, that they didn't believe that the immigration judge was saying he did not have any authority to grant a continuance, but simply that a continuance under these circumstances was excessive. Well, I do want to pause on that briefly, because it's the one piece that puzzles me, because he says it not just once, but twice and arguably three times in his decision. He says this Court does not have authority to continue a case prospectively for years while this waits. A few sentences later, he believes the DHS has the control. This is outside the ability of a court to grant what he describes as blanket continuance. I guess we can interpret that to say, well, he didn't mean it in so many words, but is there a question as to whether the Court had the authority? It might have had. I mean, you took it in terms of discretion, and surely it is the case that the Court has discretion in this subject, but does have the authority to grant a continuance. It does, and I mean, I think every time the immigration judge talks about authority, again, I think that word, he could perhaps have picked a different word, but every time it's in conjunction with phrases like blanket or the first time to continue a case prospectively for years while this waits. I think really the only fair inference to draw from this discussion is that DHS chose to initiate removal proceedings. Those were proceeding, and three years was simply too long to essentially grant an alien a state of removal based simply on a pending labor certification, and that INA 245I didn't contemplate that sort of delay. There's nothing in the INA that contemplates that sort of delay, and given what the immigration judge's duty is, which is to determine removability, decide removal proceedings, that that was simply too long, and I think the fact that every time he mentions authority or ability, it's in conjunction with terms like blanket or for so many years, is a fair indication that that's what he meant. What's at stake now as a practical matter, given that I gather that we've got the labor certification granted? So what happens as a practical matter from here forward? I mean, I would point out that, I mean, obviously this court knows that that evidence is all outside the record. Let's assume that it's true, so my understanding is it's outside the record. Presumably the petitioner could have filed a motion to reopen before the board. Now, I don't know when it was granted, so things like timeliness may come into play, but there are also exceptional circumstances. A motion to reopen could have been filed before the board with this new evidence. As far as I know, it wasn't. I mean, I checked the board's website, and I didn't see anything about that. I mean, as I understand it, only the labor certification has been granted, so the employer still has to file the I-140 visa petition on her behalf. It has to be approved. She then has to file an application for adjustment of status, which also has to be approved. And the thing to remember is that this is all discretionary, ultimately. I mean, adjustment of status is a discretionary form of relief, even if she has all of the necessary certifications. So in the end, it's still a discretionary process. So I really can't say what happens now. All that's happened now is one step in this long discretionary process has been completed. The ultimate outcome is uncertain. And if this petitioner now leaves the country on voluntary departure, I assume voluntary departure is still available given the pendency of this petition for review. I believe so. Is there any adverse consequence that attaches in terms of the ability to take advantage of the certification, assuming it works its way through, from the fact that the petitioner is outside the country rather than inside the country? I honestly don't want to say the wrong thing. I do not know the answer to that. I assume since it's voluntary departure, the same adverse consequences that would attach if it was not voluntary departure, if it was an order of removal, would not attach. But I don't want to make that representation. And I can find out if the court is interested and submit a supplemental letter. I'm trying to figure out what the practical consequences are as well as the legal consequences. If the practical consequences are merely that the petitioner has to be outside the country while waiting for this process to be completed, that's one thing. If, on the other hand, it imposes, for example, a statutory waiting period because the person is now outside the country, that's a different thing. And your answer is you don't know it as you stand here. It is. I mean, my other answer is that really that's all irrelevant, because really the only question before the court is in, as Judge Silverman pointed out, in 2003, whether the immigration judge abused his discretion in denying this continuance. It's now the middle of 2007. Now she has an approved labor certification, but the process still isn't finished. I'm not sure it's entirely irrelevant because we're trying to figure out, okay, what are the consequences for these various actions? And as you're trying to evaluate how the I.J. is exercising his or her discretion, you're trying to figure out, okay, what would be the consequences? What things are informing the I.J.'s judgment? Well, but the only thing that could have informed the I.J.'s judgment at that point, given that there was no approved labor certification, was how long it might take for all of this to resolve itself. I mean, I would also point out, and I'm not sure this was part of the I.J.'s decision, but in this case the petitioner isn't even the one with the labor certification. So, you know, in his case it's even one more step removed. So in 2003 they would have had to stay married, the labor certification would have had to be approved. I mean, all of this would have had to happen, and now in 2007 we can look back with hindsight and say, oh, well, the labor certification was approved and they're still married. But those considerations, the I.J. couldn't have even considered them in 2003. None of that had happened. And so the question is, given the purely speculative nature of all of this, whether it was an abuse of discretion at that time to deny the continuance. And as we filed a 20HA letter, both the Third Circuit and the Kahn decision, the Fifth Circuit and the Ahmed decision, the Eleventh Circuit and the Zafar decision, all arrive at the same conclusion with somewhat lengthy analyses. But they all focus both on the discretionary nature of adjustment, which means that even if all these other requirements are met, it's still a discretionary decision to grant it. And also that at the time all of these cases arise, the labor certification hasn't even been approved. So there are a number of statutory requirements that still will have to be met for the aliens to be eligible for adjustment. And it's just simply too speculative a process to countenance a three-year delay. I mean, it's essentially giving an alien who just has a pending labor certification a three-year, four- or five-year stay of removal. And there's nothing in 245i that suggests that that's appropriate. There were a number of other arguments made by Petitioner in her opening brief. We addressed them all in our brief. If the Court has any specific questions about them, I'd be happy to answer them. Judge Silverman? No, thank you. Okay. Thank you very much. Your Honor, the fact that the labor certification approval is taking so long, it's beyond the circumstances which are within control of respondent. And if there are so many other aliens who are allowed to wait for that long for the Department of Labor to process and go through I-140 and wait for their visa to become eligible, then why this particular non-citizen, non-criminal law-abiding respondent should be punished because of his citizenship? Because he belongs to Indonesia and he was required to come forward and register himself. And thereafter, he was subject to removal proceedings. Well, I mean, he's subject to removal proceedings because he was supposed to leave the country on November 5, 1990, and never left. That is correct, but then subsequent to that, a law was enacted which allowed all the aliens who remained in this country illegally, whether entered with admission or without admission, were allowed to adjust their status as long as they file a good faith or are grandfathered by a good faith filing of labor certification application. But he never filed such an application, did he? No, he did not. No. So that's why he's removable. He came here and never left when his visa expired. He never filed anything. He didn't file asylum. He didn't file anything. His wife was married to his wife since 1993 or 1994, and they are living together and married to each other for a very, very long time. So it's not something that he just married to her subsequent to being put into the removal proceeding. And moreover, at this time, I believe what the law requires is it simply requires a good faith filing of the labor certification, and it also provides the grandfathering of the alien if his spouse or other beneficiary have filed I-130 or labor cert. I understand this is outside the record, so we'll deal with it as we deal with it. Tell us precisely how far along we are with the process of labor certification and adjustment of status for the spouse. Your Honor, I would estimate no more than six months. Six months until what? Because the reason is that, Your Honor... No, not because, but six months until what? Until October or November of this year. No, no. Six months until what happens? Until he or she adjusts their status. He or she? I mean, his wife as long as him. Can he adjust at the same time she adjusts? That is correct, Your Honor. Because they are married. And is there any adverse legal consequence to your client, the petitioner, being outside the country for the next six months while we wait for this to happen? Yes. And what is that adverse legal consequence? Your Honor, he will be barred for 10 years to apply for adjustment of status because of the 10-year and 3-year bar. Even though he has voluntary departure? That is correct, Your Honor. Voluntary departure will bar him for five years. And plus he has a consequence because he remained in this country illegally for more than a year. So that would bar him for 10 years under IHRA provisions. So in other words, your prediction of the consequences are if we uphold the IJ's order and allow voluntary departure and if your client then departs this country, he will not be permitted to return to this country for 10 years? That is correct. And the consequence if we remanded the IJ saying that, no, you actually did have discretion to grant the continuance so that the removal order is not entered, that adjustment of status would be available without regard to either the five or the 10-year bar? Yes, Your Honor. Judge Fletcher, I wonder if we could ask government counsel, if having heard that, if she agrees that that's the way the law operates, if that triggers any recollection on her part. I would need to look into that and file a supplemental letter with the court. You know, I think it might be useful to have that precise point briefed by both sides, including making sure the government has an opportunity to do that. How long would you anticipate that it would take for letter briefs on this point to be filed with the court? The question is what the consequences of voluntary departure are if his wife obtains adjustment of status. Well, I'll say it a little bit differently, but I think you understand and you can work this through as you're working through your response. What are the consequences for him if we simply deny the petition now, which will then result in the order of removal with voluntary departure, compared to if we remand to say, listen, you had the authority to issue the continuance and please think about it some more. It's been represented here that there's a 10-year bar if we simply deny the petition at this point. I mean, that assumes that we're now considering this extra record evidence that the labor certification. Yes, but I'm asking a legal question rather than a factual question. I mean, I think we're just interested in knowing, okay, how does the statutory structure work? Statutory and regulatory structure. So I come back to my question just in terms of timing of letter briefs. How long would either of you anticipate that you need for this? I would say around 30 days. Probably a couple of weeks. All right, I can do that. And I would say, although I am interested in the law, if it turns out that either of you discover that factual representations have been made to the court are erroneous, then that ought to be pointed out and consequences could flow from the failure to do so. So please make sure that the understandings that have been conveyed are accurate. Yes, Your Honor. I understand it correctly that, Your Honor, if he remained in this country illegally for more than a year, if they are in this country illegally for more than six months, there is a three-year bar according to IRA provisions in 1996. And if the alien remains in this country for more than a year, then there is a 10-year bar. So in addition to five-year bar, if he leaves as a voluntary departure, then he is also facing a 10-year bar. Okay. Let's have simultaneous letter briefs submitted within 30 days. Sure. I won't put a page limit on them, just however long it takes. Now, I'm a little hesitant to say this, but I will. I would hope that the quality of brief submitted is better than the quality of brief so far submitted in this case. Not only citation of relevant authority, but proofreading, fragmentary sentences. I waited to hear you speak, and the problem is not a problem with the language. The problem is with the quality of the brief. And I would simply say that I hope we get a better quality brief than the one we got. I apologize, Your Honor. Thank you. At this point, I think we'll submit. Thank both of you for appearing. The case of Cione v. Gonzalez, I shouldn't say it's not submitted for decision. We will not submit it for an actual decision in terms of our sort of internal processes until we've received the letter brief from both of you. Thank you. We're now in recess. This concludes our week, and Judge Silverman, I would say we'll see you in the conference room, but I think the accurate is we will hear you in the conference room. Fair enough, Mr. Fletcher. Thank you.
judges: Silverman, W. Fletcher, Clifton